Merle D. VINCENT, Jr., Regional Director of the Third Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellee,

v.

LOCAL 294, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent-Appellant.

No. 482, Docket 34169.

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1970.

Decided April 2, 1970.

Dominick Tocci, Gloversville, N. Y. (Harry Pozefsky, Gloversville, N. Y., of counsel), for respondent-appellant.

Marvin Roth, Atty. for N. L. R. B., Washington, D. C. (Arnold Ordman,

Gen. Counsel of N. L. R. B., Washington D. C., Dominick L. Manoli, Assoc. Gen. Counsel, Julius G. Serot, Asst. Gen. Counsel, of counsel), for petitioner-appellee.

Thomas P. Connolly, Albany, N. Y. (Whalen, McNamee, Creble & Nichols, Albany, N. Y., of counsel), for charging party Bethlehem Steel Corp.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from an order and adjudication of civil contempt entered in the United States District Court for the Northern District of New York against appellant Local 294, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America for its disobedience and violation of, and failure and refusal to comply with, an order of the district court granting a temporary injunction pursuant to Section 10(l) of the National Labor Relations Act, as amended.[1]

I.

The Section 10(l) injunction was granted upon a petition filed by Merle D. Vincent, Jr., Regional Director of the Third Region of the National Labor Relations Board. The petition was based upon a charge filed with the Board by Bethlehem Steel Corporation and alleged that there was reasonable cause to believe that Teamsters was engaged in picketing and various related acts and conduct designed to compel Bethlehem to assign the work of fueling equipment and handling the fuel hose and nozzle at the New York State South Mall Project at Albany to employees represented by the Teamsters rather than to employees represented by Local 106, International Union of Operating Engineers (AFL-CIO) in violation of Section 8(b) (4) (i) and (ii) (D) of the Act.[2] The dis-

[1]. 29 U.S.C. § 160(l) (1964).
   That Section provides in pertinent part:
   Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b) (7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: *Provided further*, That no temporary restraining order shall be issued without notice unless a petition alleges that substantial and irreparable injury to the charging party will be unavoidable and such temporary restraining order shall be effective for no longer than five days and will become void at the expiration of such period * * * Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony; * * *

[2]. 29 U.S.C. § 158(b) (4) (i) and (ii) (D) (1964).
   That section provides in pertinent part:
   (b) It shall be an unfair labor practice for a labor organization or its agents—
      * * * * *.
   (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threat-

trict court, after conducting a hearing, found that there was reasonable cause to believe that appellant was engaging in the unfair labor practices alleged and, on July 16, 1968, entered an order enjoining appellant from engaging in such acts and conduct "pending the final disposition of the matters involved pending before the [Board]." [3]

Thereafter, the Board, pursuant to Section 10(k) of the Act,[4] conducted a hearing on the merits of the jurisdictional dispute which gave rise to the unfair labor practice charge filed by Beth-

lehem, and on January 8, 1969 issued a decision determining that employees represented by Local 106, Operating Engineers, were entitled to perform the disputed work for Bethlehem. The Board directed appellant to give notice whether or not it would comply with the determination and refrain from engaging in the unfair labor practices proscribed by Section 8(b) (4) (i) and (ii) (D).[5]

Appellant did not comply to the satisfaction of the Board, and on June 3, 1969, the Regional Director petitioned the district court for an order adjudging

en, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

\*　　\*　　\*　　\*　　\*

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work　\*　\*

3. The order enjoined appellant from:
(a) Picketing at or in the vicinity of the South Mall Project and Bethlehem's storage yards or at or in the vicinity of the premises of any other persons engaged in commerce or in an industry affecting commerce doing business with Bethlehem.
(b) In any manner, or by any means, including picketing, orders, threats, directions, instructions, requests, or appeals, however given, made or imparted, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individuals employed by Bethlehem, McEneny Oil Corporation, D. E. Long Company Inc., C. D. Gridley & Son or by any other persons engaged in commerce or in industries affecting commerce, to engage in strikes or refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials, or commodities or to perform services or in any manner or by any means threatening, coercing, or

restraining Bethlehem, or any other persons engaged in commerce or in industries affecting commerce, where an object is to force or require Bethlehem to assign the work of fueling equipment and the handling of the fuel hose and nozzle on the South Mall Project and Bethlehem's three storage yards to employees who are members of, or represented by respondent rather than to employees who are members of Operating Engineers.

4. 29 U.S.C. § 160(k) (1964).
That section provides:
Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

5. In view of evidence that similar disputes might occur in the future, the Board held that the determination applied "not only to the job site in which the dispute arose, but to all similar work done or to be done by Bethlehem Steel on any other projects in the Albany area."
The decision is reported as Local 294, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 174 N.L.R.B. No. 6 (1969).

appellant to be in civil contempt of court for violating and disobeying, and failing and refusing to comply with, the injunction order entered on July 16, 1968. The petition alleged, in substance, that appellant, at various times during April and May of 1969, induced and encouraged employees of McEneny Oil Corporation to refuse to supply fuel to Bethlehem, and continued to threaten, restrain and coerce Bethlehem with the object of compelling Bethlehem to assign the work of handling the fuel hose nozzle at the South Mall Project to employees represented by appellant rather than to employees represented by the Operating Engineers. The district court conducted a hearing and, on July 17, 1969, issued a decision finding that appellant had violated the intendment of the injunction order of July 16, 1968 and adjudging appellant to be in civil contempt. An order and adjudication in civil contempt was entered on July 30, 1969, directing appellant to purge itself of civil contempt by fully complying with the injunction order, and upon failure to do so, to pay a fine of $200 a day for every day it continued in noncompliance with that order. No fine was imposed for the past failure to comply with the injunction order.

Meanwhile, on June 5, 1969, the Regional Director had filed with the Board a consolidated complaint alleging that appellant had failed to comply with the Board's Section 10(k) determination of the jurisdictional dispute and that its activities in 1968 and in 1969 constituted unfair labor practices under Section 8 (b) (4) (i) and (ii) (D) of the Act.[6] These were the activities which formed the basis for the injunction order of July 15, 1968 and for the Board's petition of June 3, 1969 for an order of civil con-

tempt. Hearings on the unfair labor practice charges were held before a trial examiner on July 29 and 30, 1969, and on December 16, 1969, while the present appeal from the order of civil contempt was pending, the Board issued its decision and order, adopting the trial examiner's conclusion that appellant's activities both in 1968 and in 1969 violated Section 8(b) (4) (i) and (ii) (D) of the Act.[7]

On appeal, Teamsters contends that it did not violate the injunction order of July 16, 1968 and that it was error to adjudge it in civil contempt. The Regional Director argues that since the Board has made a final adjudication with respect to the unfair labor practice charge which formed the basis for the Section 10(l) injunction, both the injunction and the civil contempt order have terminated and the appeal should be dismissed as moot. Bethlehem, the charging party, which prepared a brief and participated at oral argument, would prefer us to hold that the civil contempt order is not a "final decision" under 28 U.S.C. § 1291 (1964) and is therefore not appealable.[8]

We find that the order of civil contempt is appealable, but hold that the appeal is moot.

## II.

The general rule as to the appealability of an order of civil contempt is stated in 6 Moore, Federal Practice ¶ 54.17 at 154–155 (1966) as follows:

"[A] party to a suit may not appeal an order finding or imprisoning him for the commission of a civil contempt during the pendency of the action, except in connection with some appealable order, as an interlocutory injunction, or a final judgment or decree in

---

6. Since appellant never complied with the Section 10(k) determination to the satisfaction of the Board, the Section 8(b) (4) (i) and (ii) (D) unfair labor practice charge which engendered that determination had not been dismissed. See 29 U.S.C. § 160(k) (1964), *supra*, n. 4.

7. This decision is reported as Local 294, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 180 N.L.R.B. No. 75 (1969).

8. On our disposition of this case, it is not necessary to decide whether Bethlehem should be permitted to intervene.

the civil action, or in connection with an appeal from a judgment imposing both criminal and civil sanctions" [footnotes omitted].

See Fox v. Capital Co., 299 U.S. 105, 107, 57 S.Ct. 57, 81 L.Ed. 67 (1936); Mc-Crone v. United States, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108 (1939). Where, however, civil contempt proceedings are instituted after the conclusion of the principal action rather than during the pendency of the action, the order disposing of the contempt proceedings is appealable. Stringfellow v. Haines, 309 F.2d 910, 911 (2d Cir. 1962); Parker v. United States, 153 F.2d 66, 69 (1st Cir. 1946). The issue in each case is whether the matters adjudicated in the civil contempt proceeding are otherwise subject to review. See Lamb v. Cramer, 285 U.S. 217, 221, 52 S.Ct. 315, 76 L.Ed. 715 (1932); Penfield Co. of California v. SEC, 330 U.S. 585, 591, 67 S.Ct. 918, 91 L.Ed. 1117 (1947).

■ The civil contempt order in this case, based on the Section 10(l) injunction, was issued after the conclusion of the principal action rather than during its pendency. The Section 10(l) injunction, although termed a temporary injunction, nevertheless represents the culmination of the Section 10(l) proceeding.[9] Thus, as in Parker v. United States, supra, a finding of non-appealability would effectively foreclose any review of the issues involved in the contempt order, since nothing remains to be determined on the merits of the Section 10(l) injunction proceeding and no appeal has been taken from the order granting the injunction. This distinguishes the present case from Comptone Co. v. Rayex Corp., 251 F.2d 487 (2d Cir. 1958), cited by the charging party, where a contempt order based on the

violation of a temporary restraining order in a copyright infringement case was held non-appealable because it was subject to modification prior to judgment. Furthermore, to forbid appellant an appeal in this case would leave him subject to continuing liabilities under the civil contempt order, although, as we decide below, the Section 10(l) injunction itself no longer remains in effect. This is a predicament which strongly favors appealability. See Gompers v. Bucks' Stove & Range Co., 221 U.S. 418, 451–452, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Parker v. United States, supra, 153 F.2d at 69; Dickinson v. Rinke, 132 F.2d 884, 885 (2d Cir. 1943).

For these reasons, we conclude that the civil contempt order entered against appellant is a "final decision" within the meaning of 28 U.S.C. § 1291 (1964) and, as such, is appealable.

## III.

■ We nevertheless find that the appeal no longer presents a viable controversy and is therefore moot.

In McLeod for and on behalf of National Labor Relations Board v. Business Machine & Office Appliance Mechanics Conference Bd., etc., 300 F.2d 237, 241 (2d Cir. 1962), this court said:

"Section 10(l) was designed by Congress to provide a means by which temporary injunctive relief could be obtained 'pending the final adjudication of the Board.' Sen.Rep.No.105 (80th Cong.1947), p. 27. H.R.Conf. Rep.No.510 (80th Cong.1947), p. 57. It does not provide relief beyond that stage, for Sections 10(e), (f) specify the procedure to be followed after the Board has rendered a decision. These sections allow temporary relief pending appeal or petition for enforcement, but only in aid of the Board order."

9. The situation is thus quite similar to that presented in Penfield Co. of California v. SEC, 330 U.S. 585, 591, 67 S.Ct. 918, 91 L.Ed. 1117 (1947), where the Court held appealable the denial of a motion for civil contempt based upon a refusal to comply with a production order, and in Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941), where the Court reviewed an order of civil contempt based upon a refusal to comply with an order for physical examination.

We find this analysis to be correct. Section 10(*l*), 29 U.S.C. § 160(*l*) (1964) plainly says that the Board may petition "for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter." While there might seem little reason for Congress not to have provided that the injunction could continue until the conclusion of enforcement proceedings, the answer, as recognized in *McLeod*, is found in Sections 10(e) and (f), 29 U.S.C. § 160(e) and (f) (1964), which fill the gap by allowing the Board to petition for temporary injunctive relief based on its order pending the outcome of enforcement proceedings or a petition for review. This interpretation is also consistent with what must happen if the Board determines that no unfair labor practices have occurred; the Section 10(*l*) injunction must terminate immediately.[10]

The Board's decision and order of December 16, 1969 was the final adjudication of the Board with respect to the unfair labor practice charges which formed the basis for the Section 10(*l*) injunction entered July 16, 1968. Therefore, upon the issuance of that decision and order, the injunction expired.[11] Although the injunction order was not phrased in the precise statutory language, we will not attribute to the district court an intention to exceed its statutory powers.

Since the sole purpose of the civil contempt order was to compel compliance with the injunction order, the necessity for the sanction ended with the expiration of the injunction, and the sanction itself must necessarily be terminated. See Gompers v. Bucks' Stove & Range Co., *supra*, 221 U.S. at 441, 451–452, 31 S.Ct. 492; United States v. International Union, United Mine Workers, 88 U.S.App.D.C. 341, 190 F.2d 865, 873–874 (1951); Harris v. Texas & Pacific Ry. Co., 196 F.2d 88, 90 (7th Cir. 1952); Parker v. United States, *supra*, 153 F.2d at 71.[12] Cf. United States v. United Mine Workers, 330 U.S. 258, 294–295, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Appellant can no longer be subjected to liability under the contempt order; accordingly, we have no reason to review the correctness of that order, and the appeal herein is moot.

Appeal dismissed as moot and case remanded to the district court with directions to vacate the order of civil contempt.

10. We regard as erroneous a passing remark in Douds v. International Longshoremen's Ass'n, 242 F.2d 808, 812 (2d Cir. 1957) on the continuance of the Section 10(*l*) injunction.

11. See NLRB v. Nashville Building & Construction Trades Council, 383 F.2d 562, 564 (6th Cir. 1967); Monique, Inc. v. Boire, for and on Behalf of NLRB, 344 F.2d 1017, 1018 (5th Cir. 1965); Carpenters' District Council v. Boire, for and on Behalf of NLRB, 288 F.2d 454 (5th Cir. 1961) (consent order).

We note that if the injunction did not so terminate and this appeal was not moot, our review of the correctness of the civil contempt order would necessarily involve us in a review of the correctness of the Board's decision and order of December 16, 1969, a task more appropriately undertaken, as specifically provided by the Act, in an enforcement proceeding pursuant to 29 U.S.C. § 160(e) (1964) or in a proceeding to modify or set aside the Board's order pursuant to 29 U.S.C. § 160(f) (1964).

12. "Since the complainant in the main cause is the real party in interest with respect to a compensatory fine or other remedial order in a civil contempt proceeding, if for any reason complainant becomes disentitled to the further benefit of such order, the civil contempt proceeding must be terminated." Parker v. United States, 153 F.2d 66, 71 (1st Cir. 1946).