**Robert BERRYMAN, a minor, by his next friend, Gary Hart, et al., Plaintiffs,**

v.

**August HEIN, Individually and as Principal of Meridian High School, et al., Defendants.**

**Civ. No. 1–71–3.**

United States District Court, D. Idaho.

Feb. 17, 1971.

---

Gardner W. Skinner, Webb, Tway & Redford, Boise, Idaho, for plaintiffs.

Iver J. Longeteig, John O. Fitzgerald, Ambrose, Fitzgerald & Longeteig, Meridian, Idaho, for defendants.

## MEMORANDUM OF OPINION

FRED M. TAYLOR, Chief Judge.

The plaintiffs, Robert Berryman, Mosiah Daniel and Rohe Bellone, all minors, were suspended from the Senior High School at Meridian, Idaho for violating a provision contained in a dress code promulgated by the defendant school authorities. The applicable provision which the plaintiffs admittedly violated is as follows:

> "Boys' hair should be trimmed above the eyebrows, off the ears, and the neck should be neatly cut so that hair is above the collar-line. Side burns shall not extend below the bottom of the ear."

The plaintiffs brought this action to challenge the validity of this regulation and seek a permanent injunction against the enforcement of it. They claim that their suspension from school for failure to comply with the established grooming regulation is violative of their constitutional rights under the First, Ninth and Fourteenth Amendments to the Constitution of the United States, and further, violates their rights to equal protection of the laws. The jurisdiction of this court is invoked under Title 28 U.S.C. § 1343, and is not in dispute.

The matter was tried to the court on February 5, 1971, oral and documentary evidence having been admitted on behalf

of the parties to the action, and after oral argument by counsel the case was submitted to the court for decision on the evidence, oral argument and briefs of counsel.

This case represents another in a substantial number of cases which have reached the federal courts on similar constitutional grounds relating to school regulations in regard to the style of students' hair. The court notes that the Supreme Court of Idaho has also recently considered these constitutional issues in a state court action substantially similar to this case.[1]

In this case the record reveals that prior to the events giving rise to this action, the plaintiffs were students in good standing at Meridian Senior High School at Meridian, Idaho. On December 21, 1970, the plaintiff Mosiah Daniel was informed by Vice-Principal Turnbull, one of the defendants, that he was suspended from school until he cut his hair to conform with the provision of the dress code hereinabove set forth. The plaintiff Robert Berryman received a similar mandate on January 4, 1971. While the plaintiff Rohe Bellone was not under suspension at the time this action was brought, he had been suspended for similar reasons on three prior occasions and was readmitted only after having his hair cut to meet the requirement of the dress code.

It was stipulated at trial that the plaintiffs were suspended from school solely because their hair did not conform to the restriction on style and length imposed by the dress code, and for no other reason. Thus, the primary issue here is whether the school authorities had the right to suspend the plaintiff students for such infraction in violation of their constitutional rights and liberties.

The plaintiffs testified that the length of their hair was an expression of their individuality, and also constituted an expression of their rejection of certain standards and values generally accepta-

ble to the "older generation". The plaintiffs accordingly argue that the length of their hair is a symbolic form of expression protected by the First Amendment. While there is some divergence of authority, this court is of the opinion that the most recent and authoritative cases have rejected the plaintiffs' claim in holding that expression of ideas in this fashion does not constitute significant communication which is worthy of First Amendment protection. Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970); Jackson v. Dorrier, 424 F.2d 213 (6th Cir. 1970); Brick v. Board of Education, School District No. 1, Denver, Colorado, 305 F.Supp. 1316 (D.Colo.1969); Cf. King v. Saddleback Junior College District, 425 F.2d 426 (9th Cir. 1970).

The plaintiffs suggest that this case is adaptable to the rule of "penumbral" rights to privacy announced by the Supreme Court in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). It is a sufficient answer to that argument to observe that the rights of a student, publicly appearing and participating in a program of public education, are considerably different than the marital right of privacy treated in *Griswold*, and this court is not inclined to so extend that holding. Richards v. Thurston, supra. Nor is there evidence in the record sufficient to show such a selective enforcement of the grooming regulation as to deny the plaintiffs the equal protection of the laws. Jackson v. Dorrier, supra.

Certain personal liberties, however, are established for every individual by the reservation of rights contained in the Ninth Amendment and by the Due Process Clause of the Fourteenth Amendment. This court concludes and holds that personal appearance, including hair length, is one of these personal liberties, subject only to reasonable regulation by the state in matters of a legitimate state interest. West Coast Hotel Co. v. Par-

---

1. The Supreme Court of Idaho held that hair length was a matter of personal taste protected by the Ninth Amendment, in the absence of justification for regu-

lation by school officials. Murphy v. Pocatello School District No. 25, 94 Idaho 32, 480 P.2d 878 (decided February 10, 1971).

rish, 300 U.S. 379, 392, 57 S.Ct. 578, 582, 81 L.Ed. 703 (1937); Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970); Richards v. Thurston, supra. Since the right of the plaintiffs has been established, and the violation of that right unequivocally appears in the stipulation that the plaintiffs were suspended solely because of the length of their hair, the burden is then imposed on the defendant school officials to justify the intrusion as a reasonable regulation to achieve a legitimate purpose of the state. Richards v. Thurston, supra; Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969).

██ It is beyond cavil that the school authorities in this case are asserting a most compelling state interest in providing for and implementing the education of the young people of the state. It is questionable, however, that the dress code of Meridian High School, as applied to these students, is a reasonable means of achieving that laudable goal. It is well established that such a regulation is reasonable and therefore valid only if there is evidence in the record from which school authorities could reasonably foresee a substantial disruption of, or a material interference with, the educational process. Griffin v. Tatum, 425 F.2d 201 (5th Cir. 1970); Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (5th Cir. 1968); Crews v. Cloncs, supra; Cf. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In the view of this court, the evidence adduced by the defendants falls short of meeting the burden imposed.

The evidence fails to establish any specific disciplinary problems which can reasonably be related to the length of students' hair. The testimony of Superintendent Scott to the effect that proper grooming encourages a mental attitude favorable to study and that indifferent or eccentric dress is often correlated with a negative academic attitude is not of itself sufficient. It is equally inferable that both study and dress habits are the product of a more inherent mental attitude of the student. In the absence of some factual support, such testimony alone does not suffice to show a causal relationship between hair length and amenability to discipline. There was some evidence tending to show that long-haired students might be subject to harassment and unofficial discipline by other students, to the detriment of order and discipline within the school. To the extent that such potential problems existed, however, the record is clear that they never erupted into violence or disorder, and indeed the evidence shows that at least two such impending problems were dealt with by the vice-principal of the school, and with a commendable minimum of disorder. Also, there is evidence in the record that at least a part of the feared harassment of more hirsute students was initiated, if at all, by well-meaning faculty members seeking to enforce the existing grooming regulations.

The defendants also offered testimony that long hair on male students created a safety hazard in shop classes or in athletic activities. No specific instances of injury or near injury were offered to support this generally conclusory testimony. The testimony showed only that certain faculty members had expressed concern. Moreover, the defendants have entirely failed to show that other regulations, less broad in scope, could not be applied to achieve the same effect in promoting student safety. Thus, the safety problems might justify a demand that students wear protective devices such as hair nets, headbands or safety helmets in the shop or on the athletic field. In the absence of a showing that these protective devices are insufficient, the general conclusion that long hair represents a substantial interference with education because it is unsafe is not justified. Crews v. Cloncs, supra; Westley v. Rossi, 305 F.Supp. 706 (D.Minn.1969).

Finally, the defendants contend that long hair on male students is distracting to other students, and thus disrupts the educational process. Superintendent Scott testified in substance that eccentric hair

styles were inherently distracting to other students; that the mere fact that long-haired students were flouting an established rule created a disturbance. Principal Hein testified that long hair often resulted in a nervous mannerism on the part of the student in constantly flicking his hair from his eyes. The testimony further indicated that long hair impaired the visibility of the student in reading and typewriting.

The court finds that such evidence is conclusory and insufficient to show any substantial disruption of the educational functions of the school. No evidence was offered to show the extent, if any, to which other students were distracted, or indeed, that any were in fact so distracted. The personal opinion of the superintendent in this regard is not sufficient. Crews v. Cloncs, supra. Further, the mere flouting of the rule, without more, does not show sufficient disturbance to justify its application. If such were the case, then no rule of the school board could be challenged successfully, however unreasonable it might be, since any challenge to the rule necessarily would create some disturbance. Breen v. Kahl, supra. In sum, the evidence adduced is insufficient to show any substantial distraction or disruption attributable to the length of students' hair so as to interfere with the educational process or functions at the school.

In the light of all the evidence, the court finds and concludes that the student dress code as applied to these plaintiffs and the consequent suspension of them from school had no reasonable relationship to the conduct of the educational processes with which the school officials were charged. The sanctions imposed on the plaintiffs were invoked, not for the purpose of alleviating some interference with education, but solely because the plaintiffs' hair failed to conform to the dress code. In these circumstances, the imposition upon the plaintiffs' personal liberties was unreasonable and arbitrary.

The court does not mean to imply that school officials may not in any event or in any circumstances regulate the length or style of students' hair. It is unquestionable that school authorities are vested with comparatively broad power and discretion in establishing and enforcing rules regarding student activities, insofar as those activities relate to and further the educational process. Tinker v. Des Moines Independent Community School District, supra; Richards v. Thurston, supra. Clearly, if school officials are to effectively discharge their duties, they must control all student conduct which bears some substantial relationship to the educational function. This court holds only that on this record, the defendants have failed to show such a relationship, and that accordingly there exists no justification for the restriction upon the plaintiffs' personal liberties. If circumstances were shown wherein student hair styles in fact had an adverse effect on orderly educational procedures, then school officials would undoubtedly have the power to correct the problem. For these reasons, the court declines to hold that the dress code provision here involved is unconstitutional *per se*. The dress code was applied, however, in an unreasonable and unconstitutional manner. The evidence has failed to show that the hair of these plaintiffs, or of any other students, either constituted or created any problems in student health, safety, discipline, or academic effort. Suspension of the plaintiffs for no more compelling reason than that the hair was long does not comport with due process. Griffin v. Tatum, supra; Lovelace v. Leechburg Area School District, 310 F. Supp. 579 (W.D.Pa.1970).

The court accordingly concludes and holds that the plaintiffs are entitled to injunctive relief restraining the defendants from taking any disciplinary action or imposing any punishment or sanction upon any of the plaintiffs for a violation of the dress code provision in question at the Meridian High School in the absence of any reasonable justification for such action, and which bears a substan-

tial and reasonable relationship to the educational process there.[2]

This opinion shall constitute the findings of fact and conclusions of law of the court, pursuant to Rule 54(b), Federal Rules of Civil Procedure. Counsel for the plaintiffs shall prepare a proposed judgment, serve copies of the same on opposing counsel, and submit the original to the court. Costs will not be allowed to any of the parties to this action.

2. Guidelines for school officials dealing with student conduct have been enunciated by the state legislature. Idaho Code, § 33–205 provides for suspension or expulsion of "any student who is an habitual truant, or who is incorrigible, or whose conduct, in the judgment of the board, is such as to be continuously disruptive of school discipline, or of the instructional effectiveness of the school."